CARSON *v.* CARSON.

DIVORCE—NONSUPPORT—EXCUSABLE FAILURE TO PROVIDE FOR FAMILY.

It was not sufficient evidence of a wanton and cruel neglect and refusal to support complainant, that her husband, after losing his position as local manager of a telephone exchange, about five years before the hearing, went to Washington where he failed for some time to obtain employment, but later secured work at $75 a month; that he sent occasional presents to his wife and daughter, who kept a boarding house to support themselves; that he asked them to come to him, but she wrote she would not go until he had something to which she could go, and that he had never been able to send her sufficient money to pay their expenses but intended ultimately to have them join him; that he had always been kind and had provided for the family as well as his means would permit, and would probably continue to do so if she returned to him.

Appeal from Muskegon; Sullivan, J. Submitted November 18, 1912. (Docket No. 85.) Decided December 17, 1912.

Bill by Mabel C. Carson against Byron L. Carson for divorce. From a decree for complainant, defendant appeals. Reversed.

*Cross, Vanderwerp, Foote & Ross,* for complainant.

*William Carpenter,* for defendant.

BROOKE, J. This is a divorce case. By her bill complainant charged that defendant—

"Has continuously, since July, 1907, neglected and refused to support and maintain your oratrix and her said child; he, the said defendant, being a well and able-bodied man, sufficiently able to furnish and provide support for your oratrix and their said daughter."

Upon the hearing complainant was permitted to amend by inserting the words "wantonly and cruelly" before the words "neglected and refused." From a decree in favor of complainant, defendant appeals.

It appears that the parties were married in 1896; defendant at that time being the manager of the local telephone exchange in Muskegon, at a salary of $65 per month. After about two years the parties moved to Saginaw, and then to Bay City; defendant still being engaged in the telephone business, and receiving a salary of $90 per month. This continued until early in 1907. In January of that year complainant, with her daughter, then seven years old, returned to her home in Muskegon to take care of her mother, who was then ailing, and who died shortly thereafter. In the spring of 1907, defendant resigned his position in Bay City, because his salary was reduced from $90 to $75 per month. Believing he could do better in the west, he went to Washington in July of that year. The panic of 1907 is said to have been responsible for the fact that he was unable to get any employment for some time. In the meantime complainant kept boarders in her father's home in Muskegon, thus supporting herself and child. The father died in 1908, and she and her brother inherited the property, valued at from $5,000 to $6,000.

During the five years, 1907–1911, while complainant was thus supporting herself and child, defendant contributed practically nothing to the support of the child, and nothing to the support of complainant. An operation upon the child's throat becoming necessary, complainant wrote defendant for money, and he sent $100 for that purpose. He claims to have sent $150. The expense of the operation was $160, the balance of which was borne by complainant.

On May 22, 1911, complainant, being tired and worn out, wrote defendant that she intended to give up her boarders and go west to him. In this letter she asks him

to tell her exactly how he is situated. Defendant's answer to this letter shows that at that time he had a position at $75 per month, but hoped soon to do better. His net capital at the time he wrote was but $77.50. While he expressed an earnest desire to have complainant and their child join him, his letter was, upon the whole, very discouraging, and indicated plainly that at that time he was unable to support complainant and her daughter. Complainant does not appear to have answered this letter, but three months later (August, 1911) filed her bill of complaint.

The earnings of the husband during the first 10 years of his married life seem to have been insufficient for the support of his family. The record does not show any particular extravagance upon the part of either of the parties, yet they were always in debt. They never seemed to be quite able to make ends meet. This condition of their finances is claimed by complainant (and doubtless truthfully) to have caused her much worry and anxiety. During his absence in the west, she repeatedly wrote to him that she would not go to him until he had *something* to which to go. That time seems never to have come; for never has defendant been able to send to her money sufficient to take her and the child to him. There seems to us no doubt, however, that defendant, during all these five years, has been earnestly, though, perhaps, inefficiently, striving to gain a foothold —to better his condition and ultimately to bring his wife and child back to him. His letters, we believe, indicate an honest, genuine affection for his family. While he deplores his past failures, he is always optimistic and hopeful for the future. Complainant herself credits his good intentions. She testified:

"*Q.* Well, now, then, I will say that you haven't any doubt that if you should go out there to live with him that he would support you to the extent that his earnings would enable him to do?

"*A.* No; I think he would do that, I suppose."

Defendant was always kind to his family. Complainant says:

"He was one of the quiet sort. He was never ugly."

At the time of the hearing defendant was local manager of a telephone and telegraph office at Centralia, Wash., at a salary of $85 per month, with (he says) good prospects of early advancement. He then expressed himself as anxious and willing to support his wife and child, if they would go to him.

Can defendant's failure to support complainant for five years, which is admitted, be construed, under the circumstances of this case, to have been wanton and cruel, within the meaning of the statute? We are constrained to hold that it cannot be so construed. *Stewart* v. *Stewart*, 155 Mich. 421 (119 N. W. 444). Neither misfortune nor incompetence resulting in a failure to support affords the wife any ground for relief under the law. The possibility of such a result was one of the hazards complainant undertook when she assumed the burdens incident to the contract.

The decree must be reversed and the bill dismissed, but without costs.

MOORE, C. J., and STEERE, McALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.